**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **GEORGE M. TENNEY III,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 08-40041-FDS** |
| **DEUTSCHE BANK TRUST CORPORATION,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER ON**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

**SAYLOR, J.**

This is a civil action arising out of alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f ("TILA") and its implementing regulation, Federal Reserve Board Regulation Z, 12 C.F.R. § 226, as well as their Massachusetts counterparts, the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, §§ 1-34, and 209 C.M.R. Part 32.

Plaintiff George M. Tenney III obtained a home mortgage from First NLC Financial Services, LLC in January 2006. At the time, First NLC provided him with a notice advising him of his right to rescind the transaction within a three-day cooling-off period, as required by TILA. At the same time, however, Tenney was presented with a post-dated document prepared for his signature confirming that three days had elapsed since receipt of the notice of right to rescind and that the right to rescind had not been exercised. More than 14 months later, Tenney sought to rescind the transaction on several occasions, contending that the rescission period had not expired

due to TILA violations resulting from First NLC's provision of confusing and inconsistent material disclosures relative to his notice of right to rescind. The rescission requests were refused and Tenney commenced litigation.

Defendant Deutsche Bank Trust Company, a successor in interest to NLC, has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be denied.

## I. Background

### A. Factual Background

The Court accepts as true all well-pleaded facts in the complaint.

On January 17, 2006, George Tenney obtained a loan from First NLC Financial Services, LLC for the purpose of debt consolidation. The loan was secured by a mortgage on his residence.

In connection with the loan transaction, First NLC provided Tenney various documents, including (1) a note in the principal amount of $166,000; (2) a mortgage; (3) a Truth in Lending statement; (4) a Notice of Right to Rescind; (5) a Certificate of Confirmation of Notice of Right to Rescind form; and (6) a HUD-1 Settlement Statement.

At the closing of the transaction, Tenney was presented with and required to sign a "Certificate of Confirmation of Notice of Right to Rescind." In relevant part, the document stated the following:

> Whereas more than three (3) business days have elapsed since the undersigned received my/our Notice of Right to Rescind and the Truth-in-Lending Disclosure Statement concerning the transaction identified above; in order to induce **FIRST NLC FINANCIAL SERVICES, LLC** to proceed with full performance under the agreement in question, the undersigned do herewith warrant, covenant and certify that I/we, jointly and separately, have not exercised my/our Right to Rescind; that I/we do hereby ratify and confirm the same in all respects. I/we

> further represent that the undersigned is/are the only person(s) entitled to rescind, in that I/we am/are all of the persons who have an ownership interest in the real property or I/we am/are all of the person(s) who will be subject to the security interest in the real property.
>
> I/We further acknowledge that I/we am/are signing this certificate on or after:_ <u>1/23/2006.</u>

The text is then followed by a signature block prepared for "George M Tenney III." (Compl. at Ex. 2.)

Deutsche Bank Trust Corporation is a trustee of a trust called IXIS-2006-HE2, which has ownership rights in a securitized pool of mortgages. The securitized pool contains the mortgage entered into between Tenney and First NLC.

On March 30, 2007, more than 14 months after the loan closing, Tenney sent a letter to First NLC in Florida seeking to exercise the right to rescind the loan for violations of TILA and the state statutory equivalent. (Compl. at Ex. 3.) On January 22, 2008, he again tried to rescind the loan, this time sending a letter to Saxton [*sic*] Mortgage Servicing. (Compl. at Ex. 4.)[1] He made a final attempt to rescind the loan by letter dated February 6, 2008 and sent to Deutsche Bank Trust Company in New York. (*Id.*). None of the requests for rescission were granted.

**B. <u>Procedural Background</u>**

On March 6, 2008, Tenney filed the complaint in the present action, naming Saxon Mortgage Services, Inc. and Deutsche Bank Trust Corp. as defendants. The complaint seeks a declaration that Tenney is entitled to rescission of the loan, as well as statutory damages,

[1] Plaintiff alleges that Saxon Mortgage is the servicer of its loan.

attorney's fees, and litigation expenses and costs.[2]

Deutsche Bank has moved to dismiss for failure to state a claim upon which relief can be granted.

## II. **Analysis**

### A. **Standard of Review**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations, citations and original textual alterations omitted).

### B. **The Truth In Lending Act and Regulation Z**

TILA requires creditors "to disclose clearly and accurately all the material terms of a credit transaction." *Palmer v. Champion Mortgage*, 465 F.3d 24, 27 (1st Cir. 2006) (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)). It provides further protection to consumers by guaranteeing them a three-day cooling-off period within which they may, "for any

---

[2] On March 5, 2008, Saxon moved to dismiss the complaint. Pursuant to a joint stipulation of dismissal filed on May 14, 2008, the claims against Saxon were dismissed with prejudice.

reason or for no reason," rescind certain types of transactions. *McKenna v. First Horizon Home Loan Corp.* ("*McKenna I*"), 475 F.3d 418, 421 (1st Cir. 2007). "This three-day rescission period begins to run when the transaction is consummated or upon delivery of notice of the consumer's right to rescind, whichever occurs later." *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12, 14 (1st Cir. 2007).[3] The three-day rescission period may be extended for up to three years if the lender fails to live up to its obligations under TILA, including any failure to give notice of the right to rescind. *See Palmer*, 465 F.3d at 27; *McKenna I*, 475 F.3d at 421.

In addition to the statute, the Board of Governors of the Federal Reserve System has issued a regulation known as Regulation Z that governs, among other things, the disclosures that lenders must make to consumers. 12 C.F.R. § 226.1 *et seq*. Regulation Z includes the following concerning notice of the borrower's right to rescind:

> The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
> (ii) The consumer's right to rescind the transaction.
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> (iv) The effects of rescission, as described in paragraph (d) of this section.
> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).[4] Thus, in this case, whether a lender's closing practice complies with TILA depends on whether the creditor "clearly and conspicuously" disclosed the borrower's right

---

[3] "Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests." *McKenna I*, 475 F.3d at 421 (citations to the statute omitted).

[4] Both parties agree that the analysis under the MCCCDA is identical. *See* Def. Mem. at 2 n.1; Pl. Mem. at 2; *see also McKenna I*, 475 F.3d at 422 ("Thus, even though the parties agree that the rescission claims in this case invoke the MCCCDA, they also agree that, given the congruence between the two statutes, the TILA supplies the applicable rules of decision.").

to rescind.[5]

In making this determination, "courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer—a consumer who is neither particularly sophisticated nor particularly dense." *Palmer*, 465 F.3d at 28. Thus, "the question [is] whether the average consumer, looking at the [loan documents] objectively, would find [them] confusing." *Palmer*, 465 F.3d at 28. Any subjective, or actual, confusion by the consumer is immaterial. *See id.*, 465 F.3d at 28 (explaining that in TILA actions courts focus "the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings").

TILA does not impose strict liability for technical defects in disclosures. "Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice." *Santos-Rodriguez*, 485 F.3d at 17 (citing cases); *see also McKenna v. First Horizon Home Loan Corp.* ("*McKenna II*"), 537 F. Supp. 2d 284, 290 (D. Mass. 2008) (concluding "that the Notice, while not perfect, clearly and conspicuously disclosed to Plaintiffs the effects of the rescission").[6] As the *Santos-Rodriguez* court observed, "[W]e do

---

[5] This issue presents a question of law, appropriate for determination on a motion to dismiss. *See, e.g., Gambardella v. G. Fox & Co.*, 716 F.2d 104, 113 (2d Cir. 1983) ("[Where] the sole issue is whether required disclosures have been made clearly and conspicuously, or whether additional disclosures confuse or mislead, the court may appropriately decide the plaintiff's claims as raising issues of law.").

[6] The case law is not uniform in that regard. *See Santos-Rodriguez*, 485 F.3d at 17 n.6 ("We do not follow the Seventh Circuit's view that 'TILA does not easily forgive "technical" errors.'") (rejecting *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006)); *see also McKenna II*, 537 F. Supp. 2d at 290 ("Plaintiffs point to caselaw in other circuits taking a stricter, zero-tolerance approach when determining whether notice meets the TILA standard. . . . Reliance on [these cases] is misplaced because the First Circuit recently declined to follow the hyper--technical approach of these circuits."). Cases within the Circuit to the contrary appear to antedate the recent First Circuit developments. *See, e.g., New Me. Nat'l Bank v. Gendron*, 780 F. Supp. 52, 57 (D. Me. 1991) ("Courts have imposed a standard of strict liability under the TILA where a lender has violated any of its provisions.").

not require perfect disclosure. The question before us is not whether the notification in Form H-9 would have been more complete than the notification plaintiffs actually received, but only whether the notification plaintiffs actually received met the requirements of the clear and conspicuous standard laid out in Regulation Z." 485 F.3d at 18.[7]

**C. Whether the "Confirmation" Certificate Violated TILA**

Here, Tenney contends that the Notice of Right to Rescind was negated and contradicted by the simultaneous issuance and required execution of the "Confirmation" certificate. Specifically, plaintiff contends that First NLC provided materially misleading and confusing notice of the right to rescind in violation of 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 226.23, by asking him to sign a post-dated certificate on the day of the loan closing to confirm that three business days had elapsed and that he was not exercising his right to rescind. The Court agrees.

Whether or not the notice of the right to rescind, standing alone, complies with Regulation Z, requiring a borrower to confirm at the time of closing that three days *have* elapsed and that the right to rescind *has not* been exercised is likely to confuse and mislead a hypothetical average borrower. As Judge Saris of this District concluded on similar facts, "What has the serious potential for actual harm is the request to sign both forms at the closing. Not only might a reasonable borrower believe it was necessary to sign both forms at the time of closing, but the practice is particularly confusing because a reasonable borrower might not understand that despite

---

[7] The First Circuit has noted that this approach is consistent with the legislative history of TILA and its amendments. *See McKenna I*, 475 F.3d at 424, 425 ("Congress [amended] TILA to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations. In taking this step, Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations."). *See also Santos-Rodriguez*, 485 F.3d at 17 & 17 n.6 (citing *McKenna I*).

signing the confirmation he still had the right to rescind in the three day cooling off period." *Rodrigues v. Members Mortg. Co.*, 323 F. Supp. 2d 202, 209 (D. Mass. 2004). Taken as a whole, therefore, the notice did not provide clear and conspicuous notice of the right to rescind.

Defendant's attempts to avoid this conclusion are unavailing. Defendant contends that the Notice form complied in all respects with TILA, that the "Confirmation" does not negate or contradict the disclosures, and that the "Confirmation" could not be confused with waiver.[8] It relies on case law to the effect that signing such documents before the cooling-off period expires is compatible with TILA. But *requiring* a borrower to sign a post-dated "Confirmation," as defendant is alleged to have done here, is materially different from simply presenting such a document to the borrower at the closing. *See Rodrigues*, 323 F. Supp. 2d at 209 ("Although there is no bar to the provision of both forms simultaneously, concerns are triggered when a borrower is asked to sign the waiver at the closing, before the three-day cooling off period has expired."). It is also materially different from a situation where the borrower signs such a statement voluntarily before the elapse of the three days. When the borrower is told that he must sign a statement that confirms that "in order to induce" the lender to go forward with the loan, he does "herewith warrant, covenant and certify" that he has not "exercised my/our Right to Rescind," it is highly likely that he will be misled into believing that he can no longer rescind the

[8] The Federal Reserve regulations allow "waiver" only in cases of personal financial emergency and then only if a specific protocol is followed. *See* 12 C.F.R. § 226.23(e)(1) ("The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind. Printed forms for this purpose are prohibited . . . ."). Thus, strictly speaking, defendant is correct that First NLC's practice is not likely to be confused with waiver as defined by the regulations. However, the functional effect of the borrower's "confirmation" is equivalent to a waiver of rescission rights. This is the issue that occupies the Court herein.

loan within the cooling-off period.

The language employed in the "Confirmation" certificate is particularly problematic. First, the passage is drafted in legalese that is unnecessarily convoluted and difficult for the average consumer to read. Second, the title of the document is misleading. The borrower is being asked to "confirm" that he will not exercise his right to rescind, not merely to confirm notice of that right. In fact, there is already a space provided on the Notice itself for the borrower to acknowledge receipt. Third, the passage states that three business days have already elapsed.

> [This is] quite simply, untrue; three days had not passed. The average borrower who was asked to sign such a statement document at the closing would be confused about whether he was still entitled to a three-day 'cooling off' period. He likely would assume, with good reason, that by signing the Confirmation, he had given up his right to rescind the deal.

*Adams v. Nationscredit Fin. Servs. Corp.*, 351 F. Supp. 2d 829, 834 (N.D. Ill. 2004) ) (citing *Rodrigues* and *Wiggins v. Avco Fin. Servs.*, 62 F. Supp. 2d 90, 95 (D.D.C. 1999)).[9] Fourth, and perhaps most troubling, the "in order to induce" language combined with a requirement that the document be signed on the day of the closing would lead an average borrower to conclude that he was required to waive his rescission rights in order to get the lender to "proceed with full performance under the agreement."

In summary, the "Certificate of Confirmation of Notice of Right to Rescind" would confuse and mislead the average consumer. The motion to dismiss will therefore be denied.

---

[9] In *Rodrigues*, the relevant language provided as follows: "Right to Cancel Not Exercised: Borrower acknowledges that, after waiting three (3) business days, Borrower has not exercised and does not want to exercise the right to cancel the transaction which right Borrower has under law." *Rodrigues*, 323 F. Supp. 2d at 205. The language in the present case does not recite the rights listed in the Notice or phrase the waiver in terms of what the borrower "wants," but instead presents waiver as something the borrower must do in order to induce the lender to act.

## III. Conclusion

For the foregoing reasons, the motion of defendant Deutsche Bank Trust Corporation to dismiss for failure to state a claim upon which relief can be granted is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 26, 2009